UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-cv-81152

FDB II ASSOCIATES, LP,

    Plaintiff,

vs.

MOORE & VAN ALLEN, PLLC,

    Defendant.

_____/

**COMPLAINT**

    Plaintiff, FDB II Associates, LP ("FDB"), by and through undersigned counsel, hereby sues Defendant, Moore & Van Allen, PLLC ("MVA"), and states:

**JURISDICTION, PARTIES AND VENUE**

    1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. §1332(c)(1) as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

    2.    FDB is a Georgia limited partnership with its principal place of business in Atlanta, Georgia.

    3.    MVA is a North Carolina professional limited liability company with its principal place of business in Charlotte, North Carolina.

    4.    This Court has specific personal jurisdiction over MVA pursuant to F.S. §48.193(1)(a)2, as MVA committed its tortious actions and omissions therein, and the causes of action accrued therein.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3), and 28 U.S.C. § 1391(d), because a substantial part of the events and omissions giving rise to the claims occurred in this District, and because this Court has personal jurisdiction over MVA.

## GENERAL ALLEGATIONS

6. MVA was retained by FDB to provide FDB with legal advice and services in connection with FDB's claims against, *inter alia*, Arnold P. Mullen ("Mullen") arising out of Mullen fraudulently inducing FDB to invest money in a real estate project.

7. In connection with this representation, MVA filed a Complaint against Mullen, *inter alia*, on or about October 15, 2008, before the United States District Court for the Southern District of Florida, in the action styled *FDB II Associates, LP v. Stone Creek Investment Co., LLC, et al.*, Case No. 08-81185-Civ-Hurley/Hopkins (the "Litigation").

8. On March 5, 2010, a Consent Final Judgment in favor of FDB in the amount of $1,000,000.00 was entered against Mullen in the Litigation. [Exhibit A].

9. Mullen held an account with Fidelity Investments (the "Mullen Fidelity Account") in the State of Florida, against which FDB could enforce its Consent Final Judgment. The Mullen Fidelity Account had more than sufficient assets to satisfy the Consent Final Judgment at the time of entry of the Consent Final Judgment. MVA was aware of the existence of this account at the time of entry of the Consent Final Judgment against Mullen. Moreover, at the time of entry of the Consent Final Judgment against Mullen, MVA was well aware of the fact that there was another creditor of Mullen's that was attempting to obtain control over Mullen's assets, including the Mullen Fidelity Account.

10. However, rather than immediately cause a Writ of Garnishment to be served on

Fidelity Investments, so that FDB would have control over the Mullen Fidelity Account and be able to obtain satisfaction of the Consent Final Judgment, MVA did not cause such a Writ to be served on Fidelity Investments until nearly four months later on July 1, 2010.

11.  On June 30, 2010, the day before the Writ of Garnishment was served on Fidelity Investments on behalf of FDB, the other creditor of Mullen's obtained an Order from a Florida state court entitling that creditor to the assets in the Mullen Fidelity Account, and that creditor instructed Fidelity Investments to transfer the assets in the Mullen Fidelity Account to that creditor.

12.  As a result, FDB was forced to engage in adversarial proceedings against that other creditor to determine which creditor would obtain title to the assets in the Mullen Fidelity Account. FDB was forced to spend a substantial amount of money in attorneys' fees, costs, and expenses litigating against the other creditor, both before the United States District Court for the Southern District of Florida and the United States Court of Appeals for the Eleventh Circuit.

13.  By Opinion dated October 25, 2012, the United States Court of Appeals for the Eleventh Circuit held that the other creditor had established control over the Mullen Fidelity Account on June 30, 2010, thereby entitling that creditor to the assets in the Mullen Fidelity Account, to the exclusion of FDB. [Exhibit B].

14.  Mullen has no other known assets against which FDB can enforce its Consent Final Judgment. As a result, FDB has not collected any money on its $1,000,000.00 Consent Judgment against Mullen.

15.  All conditions precedent have been fulfilled, waived, or otherwise satisfied.

## COUNT I - 
## PROFESSIONAL NEGLIGENCE

16.     FDB realleges and incorporates by reference the allegations contained in paragraphs 1 through 15 as if fully set forth herein.

17.     As legal counsel for FDB, MVA owed FDB a duty to exercise reasonable care in its provision of legal advice and services.

18.     FDB relied on MVA to properly represent it in the prosecution of its claims against, and enforcement of the Consent Judgment against, Mullen.

19.     MVA breached this duty to exercise reasonable care by failing to timely cause a Writ of Garnishment to be served on Fidelity Investments, so that FDB, rather than the other creditor, would have been the first creditor of Mullen's to establish control over the Mullen Fidelity Account.

20.     As a direct and proximate result of MVA's actions and omissions, FDB has suffered compensatory and special damages, including but not limited to, the $1,000.000,00 Consent Judgment against Mullen that can now not be collected, postjudgment interest on the $1,000,000.00 Consent Judgment, and FDB's attorneys' fees, costs, and expenses in litigating against the other creditor.

WHEREFORE, Plaintiff, FDB II Associates, LP, demands judgment in its favor and against Moore & Van Allen, PLLC for compensatory and special damages, including but not limited to, the $1,000.000,00 Consent Judgment against Mullen that can now not be collected, postjudgment interest on the $1,000,000.00 Consent Judgment, and FDB's attorneys' fees, costs, and expenses in litigating against the other creditor, together with costs, and such other and further relief as this Court deems just and proper.

## COUNT II -
## BREACH OF FIDUCIARY DUTY

21. FDB realleges and incorporates by reference the allegations contained in paragraphs 1 through 15 as if fully set forth herein.

22. MVA owed FDB a fiduciary duty. This fiduciary duty arose in two ways:

    (a) FDB reposed great trust and reliance in MVA, a large, well-known law firm, to protect its interests in prosecuting its claims against Mullen; a trust and confidence that MVA voluntarily accepted; and

    (b) FDB hired MVA to serve as its attorneys, and provide legal advice and counsel, in connection with the prosecution of its claims against Mullen.

23. As a fiduciary, MVA owed FDB the duties of care, loyalty, and good faith.

24. MVA breached its fiduciary duty to FDB by failing to timely cause a Writ of Garnishment to be served on Fidelity Investments, so that FDB, rather than the other creditor, would have been the first creditor of Mullen's to establish control over the Mullen Fidelity Account.

25. As a direct and proximate result of MVA's actions and omissions, FDB has suffered compensatory and special damages, including but not limited to, the $1,000.000,00 Consent Judgment against Mullen that can now not be collected, postjudgment interest on the $1,000,000.00 Consent Judgment, and FDB's attorneys' fees, costs, and expenses in litigating against the other creditor, including disgorgement of the attorneys' fees, costs, and expenses paid to MVA by FDB in connection with litigating against the other creditor.

WHEREFORE, Plaintiff, FDB II Associates, LP, demands judgment in its favor and against Moore & Van Allen, PLLC for compensatory and special damages, including but not limited to, the $1,000.000,00 Consent Judgment against Mullen that can now not be collected, postjudgment interest on the $1,000,000.00 Consent Judgment, and FDB's attorneys' fees, costs, and expenses in

litigating against the other creditor, including disgorgement of the attorneys' fees, costs, and expenses paid to MVA by FDB in connection with litigating against the other creditor, together with costs, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable as of right.

Dated: November 7, 2013

        KATZMAN, WASSERMAN,
        BENNARDINI & RUBINSTEIN, P.A.
        7900 Glades Road, Suite 140
        Boca Raton, Florida 33434
        Tel.: (561) 477-7774
        Fax:  (561) 477-7447

        By:_____/s/_____
        CRAIG A. RUBINSTEIN
        Fla. Bar No.: 77755
        car@kwblaw.com
        mrm@kwblaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-80820-CIV-HURLEY/HOPKINS
(consolidated with Case No. 08-81185)

**CLOSED CASE**

ARTHUR SMITH and SUE SMITH,

    Plaintiffs,

v.

POWDER MOUNTAIN, LLC, a Delaware
Limited Liability Company, STONE CREEK
INVESTMENT COMPANY, LLC, a
Delaware Limited Liability Company,
THOMAS STRAUSS, an individual and
ARNOLD MULLEN, an individual,

    Case No. 08-80820-CIV-HURLEY/HOPKINS

    Defendants.
_____/

FDB II ASSOCIATES, LP,

    Plaintiff,

v.

STONE CREEK INVESTMENT CO., LLC,
*et al.*,

    Case No. 08-81185-CIV-HURLEY/HOPKINS

    Defendants.
_____/

### CONSENT FINAL JUDGMENT AS TO DEFENDANT ARNOLD MULLEN ONLY

The Parties to Case No. 08-81185 hereby advise the Court that Defendant Arnold P. Mullen consents to entry of judgment in favor of Plaintiff **FDB II Associates, L.P.** ("FDB") in the amount of one million dollars ($1,000,000.00) as to the claims asserted against Mullen in the Amended Complaint filed by FDB. The judgment in favor of FDB as set forth herein does not include, and is without prejudice, to FDB's rights to pursue all of its claims for judgment against all of the other defendants in this matter. The judgment in favor of FDB and against Mullen set

CHAR2\1230994v3

**EXHIBIT A**

Case 9:13-cv-81152-DTKH    Document 1    Entered on FLSD Docket 11/07/2013    Page 8 of 20
Case 9:08-cv-81185-DTKH    Document 80    Entered on FLSD Docket 03/05/2010    Page 2 of 3
Case 9:08-cv-80820-DTKH    Document 254    Entered on FLSD Docket 03/03/2010    Page 2 of 3

forth herein does not include, and Mullen is not entitled to any credit or offset for amounts FDB has collected, or is entitled to collect, from Thomas C. Strauss; Powder Mountain LLC; Stone Creek Investment Company LLC; Marvin S. Rosen; Ruden, McClosky, Smith, Shuster & Russell, P.A., or any other source in connection with the claims set forth in the Amended Complaint.

NOW THEREFORE, based upon the foregoing, it is ORDERED AND ADJUDGED THAT:

1. Final Judgment is entered in favor of Plaintiff FDB II, Associates, LP against Defendant Arnold Mullen, of Palm Beach County, Florida, in the principal amount of $1,000,000 (the "Judgment Amount");

2. This Judgment does not include and is <u>without prejudice</u> to FDB's rights to pursue all of its claims for judgment against all of the other defendants in this matter. The judgment in favor of FDB and against Mullen set forth herein does not include, and Mullen is not entitled to any credit or offset for amounts FDB has collected, or is entitled to collect, from Thomas C. Strauss; Powder Mountain LLC; Stone Creek Investment Company LLC; Marvin S. Rosen; Ruden, McClosky, Smith, Shuster & Russell, P.A., or any other source in connection with the claims set forth in the Amended Complaint.

3. The Clerk is directed to send copies of this Consent Judgment to counsel of record for the parties.

SO ORDERED, ADJUDGED, AND DECREED on this 4th day of March 2010.

Hon. Daniel T. K. Hurley

CHAR2\1230994v3

Case 9:13-cv-81152-DTKH   Document 1   Entered on FLSD Docket 11/07/2013   Page 9 of 20
Case 9:08-cv-81185-DTKH   Document 80   Entered on FLSD Docket 03/05/2010   Page 3 of 3
Case 9:08-cv-80820-DTKH   Document 254   Entered on FLSD Docket 03/03/2010   Page 3 of 3

03/02/2010  18:56   +1111111111                                              PAGE  03/03

United States District Judge
Southern District of Florida

**CONSENTED AND AGREED:**

Arnold Mullen

Dated: _____, 2010

3/3/10

Steven M. Katzman, Esq.
Florida Bar No. 375861
smk@kwblaw.com
Craig A. Rubinstein Esq.
Florida Bar No. 77755
car@kwblaw.com
Attorneys for FDB II Associates, LP

L. Louis Mrachek, Esq.
Florida Bar No.
lmrachek@pm-law.com
Page, Mrachek, Fitzgerald & Rose, P.A.
Attorneys for Arnold Mullen.

Peggy A. McBoern, #504874

CHAR2\1230994v3

RECEIVED TIME  MAR. 2.  5:55PM

Case: 11-15136    Date Filed: 10/25/2012    Page: 1 of 11

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

Nos. 11-15136 & 11-15801

D.C. Docket Nos. 9:08-cv-80820-DTKH,

9:08-cv-81185-DTKH

ARTHUR SMITH, et al.,

Plaintiffs,

FDB II ASSOCIATES, LP,

Plaintiff - Appellee,

versus

POWDER MOUNTAIN, LLC, et al.,
a Delaware Limited Liability Company,

Defendants,

PFP ASSET RECOVERY, LLC,

Third Party Claimant - Appellant.

Appeals from the United States District Court
for the Southern District of Florida

(October 25, 2012)


EXHIBIT B

Before BARKETT and PRYOR, Circuit Judges, and LAWSON,[*] District Judge.

PER CURIAM:

The issue presented in this appeal is whether a creditor becomes a "protected purchaser," Fla. Stat. § 678.5101(1), of investment security accounts when a securities intermediary stops transfers from the accounts to the debtor/entitlement holder, but requires an additional signature from the creditor before transferring the accounts to the creditor's designee. This appeal concerns a priority dispute between two creditors, FDB II Associates, LP, and PFP Asset Recovery, LLC, both of which settled complaints of fraud and breach of fiduciary duty against Arnold Mullen. PFP contends that it enjoys priority over FDB as to Mullen's accounts at Fidelity Investments as a purchaser of those accounts. Id. §§ 678.1061(4)(b), 678.5101(1). As part of Mullen's settlement with PFP, a Florida court ordered Mullen to transfer his interest in the Fidelity accounts to PFP, and after PFP sent Fidelity that order, Fidelity agreed on June 30, 2010, to transfer the accounts to the designee of PFP upon the receipt of an additional signature from PFP. Fidelity also agreed, without condition, to end transfers from the accounts to Mullen. FDB argues that PFP failed to reach an agreement with Fidelity on June 30, 2010, so as to obtain control of the accounts before FDB served writs of garnishment on Fidelity on July 1, 2010. The district court agreed

---

[*] Honorable Hugh Lawson, United States District Judge for the Middle District of Georgia, sitting by designation.

2

with FDB and entered summary judgment in its favor. Because we conclude that PFP obtained control of the Fidelity accounts before service of the writs of garnishment, we reverse and remand with instructions to enter a summary judgment in favor of PFP.

## I. BACKGROUND

On October 15, 2008, FDB II Associates, LP, filed in the district court a complaint alleging fraud, breach of contract, and breach of fiduciary duty against Arnold Mullen. The parties later settled. On March 5, 2010, the district court entered a final consent judgment against Mullen in the amount of $1 million.

On January 23, 2009, Paul Fireman, individually doing business as PFP Associates, and the Paul and Phyllis Fireman Charitable Foundation filed in a Florida court a complaint alleging fraud, conversion, and breach of fiduciary duty against Mullen. The complaint alleged that Mullen stole over $100 million from Paul Fireman and the Fireman Charitable Foundation. The parties to this litigation settled too. On June 11, 2010, Paul Fireman and Mullen entered a restitution and property transfer agreement, in which Mullen agreed to transfer all of his rights, title, and interest in certain assets, including the "Fidelity Restricted Accounts," to Paul Fireman or his assignee. Paul Fireman designated PFP Asset Recovery, LLC, as the entity to receive all assets transferred under the agreement.

On June 30, 2010, the Florida court approved the restitution agreement and ordered Mullen to transfer various assets, including the Fidelity Restricted Accounts, to an account of Paul Fireman or the designee of Paul Fireman, or to any other account to be designated by Paul Fireman. On the same day, Paul Fireman emailed Fidelity with instructions to "immediately transfer the accounts held by Fidelity" to designated accounts held in the name of PFP Asset Recovery, LLC, at the Bank of America. The law firm of Gunster Yoakley, counsel for PFP, and Richelle Kennedy, Associate General Counsel for Fidelity, sent a series of emails to each other to address the mechanics of the transfer.

Kennedy confirmed that Fidelity "received the court order and [was] placing a stop on the monthly transfer . . . into Mr. Mullen's unrestricted account" in compliance with the order. Gunster Yoakley then provided Kennedy with a letter of instruction regarding the transfer of the funds in the accounts affected by the injunction. Kennedy also requested that Mrs. Fireman sign the instructions to Fidelity in her capacity as trustee of the Charitable Foundation. The following day, July 1, 2010, Gunster Yoakley again demanded Fidelity transfer the accounts as instructed the previous day.

On July 1, 2010, FDB served Fidelity with two writs of garnishment from the district court. On July 8, 2010, Kennedy reiterated to Gunster Yoakley that Fidelity had concerns about transferring the accounts without first obtaining the

signature of Mrs. Fireman. Although Gunster Yoakley did not concede that her signature was necessary, Yoakley offered to have Mrs. Fireman sign the instructions as Fidelity requested. On July 14, 2010, Fidelity filed an amended answer to the writs of garnishment. FDB asserted that it held $3,459,960.13 and $234,290.66 in the two garnished securities accounts.

On July 20, 2010, PFP Asset Recovery, LLC, as assignee of Paul Fireman, filed a motion to dissolve the garnishment writs in favor of FDB. In support of its motion, PFP filed an affidavit of Paul Fireman in which he asserted an ownership interest in the restricted accounts under the restitution agreement. PFP also filed an affidavit from Kennedy.

The affidavit of Kennedy recited the understanding of Fidelity that PFP could require transfers from the accounts without Mullen's consent:

> On June 30, 2010, Fidelity agreed to follow PFP's instruction to place a stop of the monthly transfer of $36,500 from, in part, the subject accounts into Mr. Mullen's unrestricted account.
> . . .
> On June 30, 2010, in light of the order furnished to Fidelity, Fidelity agreed to act according to PFP's entitlement orders regarding the subject accounts without Mullen's consent.
> On June 30, 2010, in light of the order furnished to Fidelity, Fidelity understood that PFP could direct transfer of the contents of the subject accounts to itself without Mullen's consent.

5

Case 9:13-cv-81152-DTKH   Document 1   Entered on FLSD Docket 11/07/2013   Page 15 of 20

Case: 11-15136    Date Filed: 10/25/2012    Page: 6 of 11

At her deposition, Kennedy testified that Fidelity agreed to follow the instructions of PFP "because of the language contained in [the state court] order." Kennedy testified that, "on June 30, 2010, Fidelity understood that PFP could direct a transfer of the contents of the subject accounts to itself without Mullen's consent." Kennedy also testified that the Florida court order led Fidelity to understand that Mullen had relinquished control of the accounts.

After PFP filed its motion to dissolve the writs of garnishment, the magistrate judge concluded that, as of June 30, 2010, Fidelity had acknowledged the interest of PFP in the accounts and had agreed to transfer the funds in the accounts without further consent or input from Mullen. The magistrate judge concluded that Mullen no longer owned accounts at Fidelity that were capable of being garnished when the writs in favor of FDB were served on Fidelity on July 1. The magistrate judge recommended that the writs be dissolved.

When FDB and PFP later filed cross-motions for summary judgment, the district court disagreed with the recommendation of the magistrate judge and instead granted summary judgment in favor of FDB. The district court ruled that Florida law requires a binding control agreement between a financial intermediary like Fidelity and a potential purchaser like PFP for the potential purchaser to have "control" over an asset. The district court stated that "a contractual obligation is required, as opposed to a mere expression of preliminary intent to acquiesce, to

6

show that a securities intermediary has 'agreed' to follow the directions of a security entitlement purchaser under [Florida law]." The district court determined that the record interpreted in the light most favorable to PFP "reflects at best that Fidelity simply gave a preliminary indication of its willingness to acquiesce with PFP entitlement orders once certain essential terms and conditions were met, and unequivocally demonstrates that there was <u>no</u> agreement on at least one of those essential terms as of July 1, 2010." The district court concluded that, "as a matter of law, [] there was no express or implied control agreement between PFP and Fidelity as of July 1, 2010."

## II. STANDARD OF REVIEW

This Court "reviews <u>de novo</u> a district court's grant of summary judgment, applying the same legal standards as the district court." <u>J.F.K. v. Troup Cnty. Sch. Dist.</u>, 678 F.3d 1254, 1255 (11th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this assessment, we must view the evidence in the light most favorable to the nonmoving party." <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1326 (11th Cir. 1998).

## III. DISCUSSION

This appeal turns on whether PFP obtained control of Mullen's accounts at Fidelity on June 30, 2010. Under the Florida version of Article 8 of the Uniform Commercial Code, an individual must satisfy three requirements, the last of which is "control," to become a "protected purchaser" of an investment security:

> an action based on an adverse claim to a financial asset or security entitlement . . . may not be asserted against a person who purchases a security entitlement . . . from an entitlement holder if the purchaser gives value, does not have notice of the adverse claim, and obtains control.

Fla. Stat. § 678.5101(1). PFP contends that it satisfied these requirements for the Fidelity accounts before FDB served its writs of garnishment on Fidelity, but FDB contends that PFP failed to obtain control of the Fidelity accounts. See Fla. Stat. § 77.06. FDB contends that its service of the writs of garnishment on July 1, 2010, instead created a lien in favor of FDB on any of Mullen's property in the possession of Fidelity.

Under Florida law, "[a] purchaser has 'control' of a security entitlement if . . . [t]he securities intermediary has agreed that it will comply with entitlement orders originated by the purchaser without further consent by the entitlement holder . . . ." Fla. Stat. § 678.1061(4)(b). The district court reasoned that, for Fidelity to "agree" to comply with the entitlement orders of PFP, there would have to have been "a meeting of the minds resulting in a contractual undertaking

between the securities intermediary and the creditor/purchaser of the securities entitlement." The district court determined that "Fidelity was willing to comply with PFP's directions regarding securities entitlements titled in Mullen's name only upon execution of documentation acceptable to Fidelity (a letter of instruction signed by both Mr. and Mrs. Fireman)." But the district court misinterpreted section 678.1061(4)(b).

The comments to section 678.1061(4)(b) explain that, for a purchaser to obtain control of a securities entitlement, there is no "requirement that the purchaser's powers be unconditional, provided that further consent of the entitlement holder is not a condition." Id. § 678.1061(4)(b) cmt.7. "The key to the control concept is that the purchaser has the ability to have the security sold or transferred without further action by the transferor." Id. And the comments provide a useful example of how a purchaser can "control" a securities entitlement even when a securities intermediary like Fidelity places conditions on its compliance with entitlement orders by the purchaser:

> Debtor grants to Alpha Bank a security interest in a security entitlement that includes 1000 shares of XYZ Co. stock that Debtor holds through an account with Able & Co. Able agrees to act on the entitlement orders of Alpha, but Alpha's right to give entitlement orders to the securities intermediary is conditioned on the Debtor's default. Alternatively, Alpha's right to give entitlement orders is conditioned upon Alpha's statement to Able that Debtor is in default. Because Able's agreement to act on Alpha's entitlement orders is not conditioned on Debtor's

Case: 11-15136    Date Filed: 10/25/2012    Page: 10 of 11

> further consent, Alpha has control of the securities entitlement under either alternative.

Id. ex.11. The key issue here then is whether Fidelity agreed that PFP could control the accounts without further consent from Mullen.

PFP obtained control of Mullen's accounts on June 30, 2010. After Gunster Yoakley sent the state court order to Fidelity and instructed Fidelity to cease sending funds from the accounts to Mullen and to transfer those accounts to PFP, Fidelity agreed that PFP controlled the accounts without any further consent from Mullen even though Fidelity requested that Mrs. Fireman sign the instructions to transfer the accounts. Kennedy testified that Fidelity agreed to follow the instructions of PFP "because of the language contained in [the state court] order." Kennedy testified that, "on June 30, 2010, Fidelity understood that PFP could direct a transfer of the contents of the subject accounts to itself without Mullen's consent." The understanding of Fidelity that PFP could direct transfers of the Mullen accounts from Mullen to PFP, as Kennedy testified, establishes PFP had control over the accounts. The district court erred in granting summary judgment in favor of FDB.

By rejecting the understanding of control agreements expressed by the district court, we necessarily reject the contention that PFP lacked control because it failed to provide adequate consideration to Fidelity. The district court did not address whether consideration was necessary to establish a control agreement

10

between PFP and Fidelity and, if so, whether PFP provided adequate consideration to Fidelity. FDB contends that PFP was required to exchange consideration with Fidelity before PFP established control over the accounts. This contention fails. PFP controlled the accounts when Fidelity agreed that PFP could direct transfer of the Mullen accounts without consent from Mullen regardless of whether consideration was exchanged between PFP and Fidelity. Because we hold that PFP established "control" within the meaning of Florida Statutes section 678.5101(1), there is no remaining issue as to whether PFP is a protected purchaser of the accounts.

## IV. CONCLUSION

We **REVERSE** the summary judgment in favor of FDB and **REMAND** to the district court with orders to enter summary judgment in favor of PFP dissolving the writs of garnishment. We **VACATE** the final cost judgment in favor of FDB.