UNTED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81152-CIV-HURLEY

FDB II ASSOCIATES, LP,
    Plaintiff,

vs.

MOORE & VAN ALLEN, PLLC,
    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMARY JUDGMENT [55]**

This is a legal malpractice action arising out of a failed attempt to execute on a consent judgment obtained by the plaintiff, FDB II Associates, LP ("FDB"), against Arnold Mullen in prior litigation before this court, *FDB II Associates LP v. Stone Creek Investment Co., LLC*, Case No. 08-81185-Civ-Hurley.  The case is currently before the court on the defendant's motion for summary judgment based on the doctrine of "judgmental immunity."

**I.  Facts & Procedural History**.

FDB II Associates LP ("FDB") is a Georgia family limited partnership.  Edward "Clay" Bradley is the managing member of the partnership.  In 2006, Arnold Mullen introduced Mr. Bradley to an investment opportunity in a ski resort near Salt Lake City, Utah known as "Powder Mountain."  Sometime in 2008, Bradley became disenchanted with the Powder Mountain project and stopped making payments.  He hired the defendant law firm, Moore & Van Allen PLLC ("Moore") to help him recover the money he had invested by that time ($2.5 million).

Upon the recommendation of Moore, FDB hired the Florida law firm of Katzman, Wasserman, Bennardini & Rubinstein ('Katzman') to represent it in a lawsuit against all

potentially liable parties involved in the Utah project. FDB filed the above–referenced lawsuit in this court against Stone Creek Investment Co. LLC, Powder Mountain LLC, Thomas Strauss, Arnold Mullen and the law firm of Ruden McCloskey, as well as a Ruden attorney.

By 2010, Moore had negotiated settlements with Strauss, Powder Mountain, Stone Creek and the Ruden law firm which resulted in $4 million cash payments to FDB. The case then remained pending against one non-settling defendant, Arnold Mullen. In assessing the logistics of pursuing the remaining claim against Mullen, Moore discovered through a public records asset search that Mullen held a Fidelity investment account jointly with his wife.

Meanwhile, in 2009, Paul Fireman – the former chairman of Reebok – had also filed a lawsuit sounding in fraud against Mullen in Florida state court. In that case, the state court judge froze Mullen's assets as a prejudgment ancillary remedy. Moore was aware of this fact and relayed it to Bradley. On January 23, 2009, Fireman filed an emergency motion for *ex parte* temporary injunctive relief in his litigation against Mullen, listing one of the accounts at Fidelity as one into which Mullen allegedly transferred funds converted from Fireman.

Moore monitored the state court litigation and was aware of this development. In August 2009, one of the Moore attorneys assigned to the FDB claim, Joshua Lanning, sent an email to Bradley explaining that Fireman's attorneys were able to get a preliminary freeze order on Mullen's assets at the start of their case because Mullen was transferring Fireman's assets to himself.

On February 28, 2010, another Moore attorney, Greg Murphy, sent an email to Bradley advising that the best chance of recovering more money from Mullen was to secure a judgment quickly so Bradley could be ahead of Fireman as a judgment creditor, at which point they could

2

then decide the best way to try to "sell" the prior judgment to Fireman at a discount. By this time, the Moore attorneys knew about pending criminal charges against Fireman arising from the same transactions giving rise to the Fireman civil suit, and the risk of Mullen paying restitution to Fireman in the context of the criminal proceedings.

The Moore attorneys discussed the concept and difficulties of trying to immediately execute on the Mullen judgment with Bradley, and decided to seek a consent judgment against Mullen and to then try to negotiate the sale of the judgment to Mr. Fireman as a means of collecting on the judgment. Moore contends that this decision was a strategic one developed with Bradley's input and approval.

On March 3, 2010, the parties executed the Mullen consent judgment in the underlying litigation before this court, and the court entered the judgment accordingly on March 5, 2010.

The next day, Moore began negotiating with Fireman's attorney in an attempt to negotiate a sale of the consent judgment. On March 12, 2010, Bradley sent an email to Attorney Lanning asking for an update on his communications with Fireman's attorney in this regard. Lanning indicated that he had talked to Joe Curley, Fireman's attorney, who was open to the idea and said he would discuss it with Fireman.

Three days later, on March 15, 2010, Lanning sent an internal email to two other Moore attorneys expressing his concern that Fireman could be paid first if he worked with the prosecutor to receive payment through restitution. For that reason, Lanning said he "wouldn't be stunned" if Curley called him back with news that Fireman is not willing to buy the judgment, in which event he would contact Florida counsel to initiate post-judgment proceedings in aid of execution on the Mullen judgment.

3

On March 25, 2010, Lanning responded to an email from Katzman saying that his discussions with Fireman's attorney regarding sale of the Mullen judgment had stalled, and that he intended to contact Katzman the following week to discuss enforcement options.

However, it was not until April 20, 2010 that Lanning ultimately contacted the Katzman firm to discuss initiating enforcement proceedings in Florida against Mullen. In early May, Moore verbally recommended to FDB that it initiate enforcement proceedings, and on May 16, 2010, Moore followed up with a formal written recommendation for FDB to pursue enforcement action through the Katzman firm.

Bradley accepted the recommendation and hired Katzman to proceed. On June 24, 2010, Katzman filed a motion for issuance of writs of garnishment against Mullen in the underlying proceedings before this court. On July 1, 2010, this court issued writs of garnishment, and on the same day, FDB served Fidelity with the writs.

However, one day prior to service of the garnishment writs issued by this court, on June 30, 2010, the state court in the Fireman litigation entered an agreed order dissolving the prior injunction, approving the restitution agreement between Fireman and Mullen, and directing the release of Mullen funds and assets to plaintiffs. This order, which resolved Fireman's civil litigation against Mullen and provided restitution to Fireman in the criminal case, transferred the assets in the Mullen Fidelity account to Fireman.

Fireman then initiated adversarial proceedings against FDB in the underlying litigation before this court, arguing, *inter alia*, that Mullen did not own the money in the Fidelity account when FDB's federal writ of garnishment was served.

On June 26, 2011, this court granted summary judgment in favor of FDB finding that it

4

had priority in the funds. On October 25, 2012, the Eleventh Circuit reversed, finding that Fireman had control over Mullen's Fidelity accounts as of June 30, 2010, the date the state court entered its order directing the transfer of assets, because as of that date Fireman controlled the assets in the Fidelity account without the requirement of any further consent from Mullen.

On November 7, 2013, FDB filed the instant legal malpractice action against Moore, contending that Moore failed to timely recommend enforcement action on the Mullen judgment, despite knowing about the competing claims of Paul Fireman and the existence of liquid assets owned by Mullen at Fidelity. FDB contends that Moore's recommendation to execute on the judgment came too late, and that its negligent delay allowed Fireman an opportunity to assume control over the Fidelity account.

On the defense, Moore contends that its decision to postpone pursuit of post-judgment proceedings in aid of execution against Mullen was a strategic one, based on a good faith professional judgment, made with Bradley's input and approval. With this, Moore contends it is insulated from liability as a matter of law under the doctrine of "judgmental immunity."

Alternatively, Moore contends that even if it is not protected by judgmental immunity, FDB cannot establish a causal link between the timing of its recommendation to proceed with writ of garnishment enforcement action and FDB's inability to collect against Mullen on the Fidelity account, defeating its negligence claim on this independent basis. In this vein, it argues, first, that Fireman took the position the money in the Fidelity account was traceable to him, creating a constructive trust for his benefit, which, if true, would have defeated FDB's attempt to collect against the Fidelity account under any scenario. It argues, second, that it advised FDB to commence collection activity against Mullen in mid-May 2010 through Florida counsel, and that

5

both Bradley and Florida counsel were "on the clock" from mid-May to the end of June, 2010, when the application for the writ of garnishment was made, and that this delay attributable to Florida counsel created a further missed opportunity to garner control over Mullen's Fidelity account.

## II. Standard of Review

Summary judgment is appropriate under Rule 56(a) only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of genuine issues for trial. Once it carries this burden, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried.

## III.  Discussion

The doctrine of judgmental immunity, as it has evolved under Florida law, recognizes that attorney error related to fairly debatable points of law is not actionable. *Crosby v. Jones*, 705 So.2d 1356 (Fla. 1998) ("Under the venerable error-in-judgment rule, if an attorney, acting in good faith exercises an honest and informed discretion in providing professional advice, the failure to anticipate correctly the resolution of an unsettled legal principle does not constitute culpable conduct…").

Following *Crosby*, Florida appellate courts have consistently limited application of the rule to cases involving professional judgment on fairly debatable or unsettled point of law, and

have specifically rejected the suggestion that the doctrine more broadly applies to insulate any good faith exercise of professional judgment. Compare *Meir v. Kirk, Pinkerton, et al.,* 561 So.2d 399 (Fla. 2d DCA 1990) (date on which statute of limitation began to run on legal malpractice claim was fairly debatable point in law, so that attorney's exercise of professional judgment with regard to calculation of the statute was protected by doctrine of judgmental immunity) with *Sauer v. Flanagan and Maniotis, P.A.,* 748 So.2d 1079 (Fla. 4th DCA 2000) (doctrine does not protect attorney's "judgment call" in advising client to reject a settlement offer) and *DeBiasi v. Smith*, 732 So.2d 14 (Fla. 4th DCA 1999) (rule governing time for filing of motion for rehearing and certification was not so ambiguous that doctrine of judgmental immunity applied to insulate attorney from malpractice liability).

By its current motion, the defendant argues for a more expansive application of the rule, one which would extend its reach to any attorney error based on an honest exercise of professional judgment, and would encompass the defendant's tactical decision in this case to postpone initiation of proceedings in aid of execution while pursuing other collection avenues. In advancing this view, it relies on select cases from other jurisdictions embracing this broader formulation of the rule. *Hatfield v Herz*, 109 F. Supp. 2d 174 (S.D.N.Y. 2000) (decision not to file dispositive pretrial motions is discretionary litigation decision which cannot support legal malpractice claim); *Bernstein v Oppenheim & Co.*, 554 N.Y.S.2d 487 (N.Y.A.D. 1 Dept. 1990) (attorney decision not to file motion for summary judgment insulated as litigation conduct); *Rosner v Paley*, 481 N.E. 2d 553 (N.Y. 1985) (selection of one option among several reasonable courses of action found insulated); *Mosera v. Davis*, 701 S.E. 2d 864 (Ga. App. 2010) (no liability for acts and omission of attorney in conduct of litigation ion which are based on honest

7

exercise of professional judgment);

However, Florida courts have never interpreted the doctrine this broadly, instead confining its application to decisions and judgments made in unsettled areas of the law, leaving questions regarding the standard of care and breach of that standard for determination by the finder of fact. *Greene v. Leasing Associates, Inc*., 935 So.2d 21 (Fla. 4th DCA 2006) (rejecting application of the doctrine as an immunity shield for an attorney litigation decision which did not involve legal principles that were either fairly debatable or unsettled); *Haisfield v Fleming, Haile & Shaw, P.A.,* 819 So.2d 182 (Fla. 4th DCA 2002) ("judgmental immunity applies only where attorney shows that legal authority supporting the decision was "fairly debatable" or "unsettled" *and* that he or she acted in good faith and made a diligent inquiry into the unsettled area of law); *Hanson v Fowler, White, Burnett, P.A.,* 117 So.3d 1127 (Fla. 3d DCA 2012) (doctrine applies where attorney makes good faith tactical decision based on a fairly debatable point of law).

In this case, the defendant's advice concerning the content and timing of enforcement action needed to protect FDB's ability to execute on the Mullen consent judgment did not involve a debatable or unsettled area of the law, and therefore is not entitled to protection under the doctrine of judgmental immunity as a matter of law.

The court also finds genuine issues of material fact on the question of causation which precludes summary judgment. First, as to the potential impediment of a constructive trust asserted by Fireman as an independent legal bar to collection against the Fidelity account, there is a question of fact regarding whether all of the money in the account belonged to Mullen, as conceded by Fireman and his accountants in prior litigation between those parties. Second, whether the Katman's firm delay in initiating enforcement proceedings missed a second

8

opportunity to obtain control over the Fidelity account is no answer to whether Moore missed a first opportunity to obtain control over the account in mid-March when it first obtained the Mullen consent judgment; at a minimum, the conduct of the Katzman firm raises an issue on concurrent causation for resolution by the finder of fact at trial.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED:**

The defendant's motion for summary judgment [ECF 55] is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 25th day of November, 2014.

_____
Daniel T. K. Hurley
United States District Judge

cc. all counsel